# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| **BRIAN THOMPSON,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. |
| **JOHNSON CONTROLS, INC.,** | ) ) ) |
| Defendant | ) ) |

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Brian Thompson, by and through undersigned counsel, hereby complains against Defendant Johnson Controls, Inc. ("JCI") as follows:

## INTRODUCTION

1.   This case arises under the Federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; the Maine Human Rights Act ("MHRA"), 5 M.R.S. § 4551 *et seq.*; the Federal Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), and the Maine Family Medical Leave Requirements Law, 26 M.R.S. § 843 *et seq.* ("Maine FMLA").

2.   This case challenges the following willful, knowing, and/or reckless violations of State and Federal law by JCI: (A) Age discrimination and retaliation in violation of the ADEA and the MHRA; (B) Unlawful retaliation against Plaintiff for exercising his rights under the FMLA and Maine FMLA; and (C) Interference with Plaintiff's rights under the FMLA and Maine FMLA.

1

## JURISDICTION, PARTIES, AND VENUE

3. Plaintiff Brian Thompson ("Plaintiff" or "Thompson") is a United States citizen residing in the Town of Gorham, County of Cumberland, and State of Maine.

4. Defendant Johnson Controls, Inc. ("JCI") is a foreign business corporation authorized to do business in the State of Maine. JCI has branch locations throughout the country, including multiple locations in Maine such as the Westbrook branch where Plaintiff worked for decades.

5. At all times herein relevant, Plaintiff was an "employee" of JCI as that term is defined under the FMLA, Maine FMLA, ADEA and MHRA.

6. At all times herein relevant, JCI has employed more than 500 individuals.

7. This Court has subject matter jurisdiction over Thompson's claims pursuant to 28 U.S.C. § 1331.

8. Plaintiff filed a timely Charge of Discrimination against JCI with the Maine Human Rights Commission ("MHRC") on or about April 7, 2021, alleging age discrimination.

9. On December 6, 2021, the MHRC issued a Notice of Right to Sue letter pursuant to 5 M.R.S. § 4621.

10. Venue is proper in this Court because all of the discriminatory practices alleged herein occurred in the County of Cumberland and State of Maine.

## FACTS RELATED TO AGE DISCRIMINATION

11. In 1976, Thompson started working for Eastern Security/Eastern Fire Equipment ("Eastern") as a fire alarm technician.

12. Thompson spent 10 years at Eastern and then left to work at Cunningham Security for about 10 years.

13. Thompson returned to Eastern in 1996 and started working in the field of fire suppression as a Special Hazards Technician. He worked out of the Westbrook branch office continuously for the next 24 years, until Thompson was fired on June 23, 2020 at the age of 68.

14. Thompson earned $23.75 per hour at the time of his termination.

15. Various corporate entities acquired or merged with Eastern, where Thompson had worked continuously since 1996. By the time of his termination, Thompson's employer was JCI. Thompson always worked in the same branch office in Westbrook.

16. In or around 2018, fire suppression systems were no longer selling like they used to. Therefore, Thompson started doing fire alarm system work again, which he had done years before. Thompson was well qualified to do either of these jobs.

17. In 2018, JCI had multiple vacancies throughout the company, including the fire alarm division that Thompson started working for the same year.

18. JCI's purported reason for terminating Thompson's employment in 2020 was the COVID-19 pandemic. However, Thompson was the only person in the Westbrook branch office that was laid off.

19. Since Thompson's termination, JCI has had multiple vacancies that he would be well qualified to fill, but the company has not called Thompson back to work.

20. But for the company's discriminatory animus toward Thompson based on age, JCI would have called him back to work given his lengthy experience and solid record of performance over 24 years.

21. JCI's age discrimination is further evidenced by the fact that the company retained a younger employee with roughly 8 years less seniority than Thompson and laid Thompson off instead.

22. Since Thompson's termination, JCI has brought younger employees from other branches within the same district up to the Westbrook branch to do the job that he was doing. These younger employees have far less technical knowledge and skill than Thompson did.

23. Upon information and belief, the average age for a technician at JCI doing the same job as Thompson was doing is between 30 and 40 years old.

24. JCI has a preference for hiring, retaining, and promoting younger employees.

25. Upon information and belief, Thompson was paid less than younger, newer employees of JCI despite his years of experience and superior knowledge/skill in the field of fire suppression and alarm systems.

26. After his purported lay off, Thompson complained about age discrimination and filed a charge with the MHRC. Because he exercised his rights under the ADEA, JCI retaliated against Thompson by refusing to consider him for any open positions. JCI posted open positions regularly, and Thompson would have been qualified to perform any of the jobs that were posted.

27. Thompson's son is in a similar line of work and negotiated with JCI after his father's termination for Thompson to perform contract-based work for JCI, simply to give his father some ongoing income. JCI claimed that it would hire Thompson on to perform contract-based work, but because Thompson exercised his rights under the ADEA, the company never did.

## FACTS RELATED TO FMLA VIOLATIONS

28. JCI laid Thompson off as his wife was dying.

29. Thompson's wife had health problems, including without limitation cardiovascular disease, which became increasingly severe in the years leading up to his termination.

30. Upon information and belief, JCI had knowledge of Thompson's need for ongoing and/or intermittent FMLA leave since at least 2018.

31. Thompson's coworkers in the Westbrook branch understood his need for intermittent and/or extended leave to care for his spouse, who was in and out of the hospital frequently.

32. In 2019, Thompson's wife had major surgery and he needed time off to care for her. JCI was on notice of Thompson's wife's health problems and his need for FMLA leave. However, the company did nothing to inform him of his right to take such leave.

33. In 2020, Thompson got a new manager who, upon information and belief, was not supportive of his need for time off.

34. JCI never provided Thompson with notice of his rights and responsibilities under the FMLA.

35. Before being terminated from JCI, Thompson had taken FMLA leave on multiple occasions for his wife's serious medical condition. At one point, Thompson needed 5 weeks of FMLA leave. JCI failed to acknowledge or designate the FMLA leave or provide Thompson with Form WH-380-E.

36. At the time JCI fired Thompson, his wife was very sick and close to death. Her only health insurance coverage was through Thompson's employment. The enormous stress of losing these insurance benefits may have contributed to Thompson's wife's death. The reality of losing health insurance for his dying wife was incredibly emotionally distressing to Thompson.

## COUNT I – AGE DISCRIMINATION IN VIOLATION OF THE ADEA
### (29 U.S.C. § 621 *et seq*.)

37. Plaintiff repeats the allegations contained in Paragraphs 1 through 36 as if fully stated herein.

38. For the reasons outlined above, JCI's termination of Thompson's employment pursuant to a purported lay off or reduction in force was really pretext for age discrimination.

39. Defendant took adverse employment action against Plaintiff as a direct and proximate result of his age.

40. Defendant showed discriminatory bias toward older workers by retaining similarly situated younger employees who were less qualified than Plaintiff.

41. Defendant showed discriminatory bias toward older workers by favoring younger workers compared to older workers like Plaintiff.

42. Unlawful age discrimination has taken place within the meaning of the ADEA.

43. Defendant discriminated against Plaintiff on the basis of age knowingly or with reckless disregard for whether its conduct was prohibited by the ADEA. Because JCI's discrimination was willful, Thompson is entitled to liquidated damages of twice the amount of his lost wages.

44. As a result of Defendant's discriminatory actions, Thompson has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Brian Thompson requests that the Court award him damages in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

### COUNT II – RETALIATION IN VIOLATION OF THE ADEA
### (29 U.S.C. § 621 *et seq.*)

45. Plaintiff repeats the allegations contained in Paragraphs 1 through 44 as if fully stated herein.

46. After being laid off, Thompson engaged in protected activity under the ADEA by opposing JCI's unlawful practice of discriminating against him on the basis of age.

47. As a result of the above-described protected activity, JCI took adverse action against Thompson by refusing to consider or hire him for open positions for which he was well qualified.

48. JCI furthermore retaliated against Thompson by refusing to enter into the contract-based work relationship that his son, who works in a similar field, had discussed with the company.

49. A causal connection and close temporal proximity existed between Thompson engaging in the above protected activity and multiple instances of adverse action taken against him by JCI.

50. As a result of Defendant's retaliation, Thompson has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

51. JCI recklessly, knowingly, and/or willfully retaliated against Plaintiff in violation of the ADEA and therefore Thompson is entitled to liquidated damages of twice the amount of his lost wages.

WHEREFORE, Plaintiff Brian Thompson requests that the Court award him damages in the form of lost back pay, front pay, compensatory damages, liquidated

damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

### COUNT III – VIOLATION OF THE MHRA
### (5 M.R.S. § 4551 *et seq.*)

52. Plaintiff repeats the allegations contained in Paragraphs 1 through 51 above as if fully stated herein.

53. For all of the reasons stated in Counts I and II above, JCI has engaged in discrimination and retaliation against Thompson based on his age, in violation of the MHRA.

54. As a result of JCI's retaliation and discrimination, Thompson is entitled to compensatory, economic, punitive, liquidated, and all other damages available to him under the MHRA.

WHEREFORE, Plaintiff Brian Thompson requests that the Court award him damages in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

### COUNT IV – FMLA RETALIATION
### (29 U.S.C. § 2615(a))

55. Plaintiff repeats the allegations contained in Paragraphs 1 through 54 above as if fully stated herein.

56. At all times herein relevant, Thompson was eligible and qualified for leave under the FMLA.

57. Thompson put JCI on notice of his need for FMLA leave and took several leaves of absence to care for his terminally ill wife.

58. JCI violated the Federal regulations implementing the FMLA by failing to follow proper procedures for providing notice, designation, or requesting certification for FMLA leave.

59. JCI retaliated against Thompson for exercising his rights under the FMLA by terminating his employment at a time when it was clear he still needed FMLA to care for his dying spouse.

60. Between 2019 and the date of his termination, Thompson repeatedly availed himself of a protected FMLA right.

61. Thompson suffered adverse action for exercising his rights under the FMLA.

62. Thompson's exercise of his rights under the FMLA bear a causal connection to his termination.

63. Because of JCI's FMLA violations and the retaliation described herein, Thompson suffered and is entitled to damages, including but not limited to lost wages and benefits, statutory and liquidated damages, punitive damages, attorney's fees, costs, and expenses.

64. JCI's violations of the FMLA were committed willfully, justifying an award of punitive and/or liquidated damages in this case.

WHEREFORE, Plaintiff Brian Thompson requests that the Court award him damages for Defendant's violations of the FMLA in the form of lost back pay, front

pay, liquidated damages, statutory and punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## COUNT V – FMLA INTERFERENCE
### (29 U.S.C. § 2615(a))

65. Plaintiff repeats the allegations contained in Paragraphs 1 through 64 above as if fully stated herein.

66. As described above, JCI failed to provide Thompson with appropriate notice of how much FMLA leave he was entitled to, or whether the leave he needed was properly designated as FMLA qualifying.

67. Upon information and belief, JCI's motivation in failing to properly notify Thompson of his right to leave and failing to designate his absences as FMLA-qualifying was to discourage him from taking all the leave he was entitled to as he cared for his sick wife.

68. JCI is a huge company with nearly 100,000 employees, leading to a strong inference that the company was well aware of how to handle FMLA-qualifying leaves of absence.

69. JCI interfered with Thompson's substantive rights under the FMLA, which caused Thompson to take less FMLA-protected leave than he would have if proper designation and notice had been provided.

70. JCI's interference with Thompson's substantive rights under the FMLA was intentional. As a result of the company's interference, Thompson did not get all the FMLA leave he was entitled to.

71. As a result of JCI's willful FMLA interference, Thompson has suffered and is entitled to damages, including but not limited to lost wages and benefits, back pay and front pay, attorney's fees, costs, and expenses.

WHEREFORE, Plaintiff Brian Thompson requests that the Court award him damages for Defendant's violations of the FMLA in the form of lost back pay, front pay, liquidated damages, statutory and punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

### COUNT VI – VIOLATION OF THE MAINE FMLA
### (26 M.R.S. § 847)

72. Plaintiff repeats the allegations contained in Paragraphs 1 through 71 as if fully stated herein.

73. As set forth more fully in Counts IV and V above, JCI engaged in intentional, willful, and illegal conduct that also violates the Maine FMLA.

74. In addition to the damages requested in Counts IV and V above, Thompson is entitled to an award of liquidated damages under the Maine FMLA because Defendant's conduct was willful. Thompson is entitled to liquidated damages of $100 per day dating back six years from the date this Complaint was filed.

WHEREFORE, Plaintiff Brian Thompson requests that the Court award him damages for Defendant's violations of the Maine FMLA in the form of lost back pay, front pay, liquidated damages, statutory and punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## JURY TRIAL DEMAND

Plaintiff Brian Thompson hereby demands a jury trial on all matters so triable under the laws and Constitution of the United States and the State of Maine.


Dated: March 7, 2022                    */s/ Laura H. White*

                                                      _____
Laura H. White, Bar No. 4025
Danielle M. Quinlan, Bar No. 5480
*Attorneys for Plaintiff*
WHITE & QUINLAN, LLC
62 Portland Rd., Suite 21
Kennebunk, ME 04043
(207) 502-7484
*lwhite@whiteandquinlan.com*
*dquinlan@whiteandquinlan.com*